UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBRE M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C24-5204-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by misevaluating her impairments, the medical evidence, and lay witness statements. (Dkt. # 12.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings.[1]

## II.    BACKGROUND

Plaintiff was born in 1971, has a high school education, and has past relevant work as a teller and general clerk. AR at 27, 44-45. Plaintiff was last gainfully employed in June 2020. *Id.*

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

ORDER - 1

1  at 19. In November 2020, Plaintiff applied for benefits, alleging disability as of October 2019.

2  AR at 189-94. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff

3  requested a hearing. *Id.* at 131-32. After the ALJ conducted a hearing in February 2023, the ALJ

4  issued a decision finding Plaintiff not disabled. *Id.* at 17-28, 35-87. During the hearing, Plaintiff

5  amended her alleged onset date to June 2020. *Id.* at 17.

6      Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part,

7  Plaintiff has the severe impairments of fibromyalgia, cervical spine degenerative disc disease and

8  degenerative joint disease, and right shoulder bursitis/tendinitis/arthrosis with status

9  post-surgery; and retains the residual functional capacity ("RFC") to perform light work except

10 that she can occasionally: climb ladders, ropes, or scaffolds; crawl; be exposed to vibration and

11 extreme cold; and perform overhead reaching with the dominant right upper extremity. AR at 19,

12 23. Subsequently, the ALJ concluded that Plaintiff was not disabled because she could perform

13 her previous work as a teller and general clerk. *Id.* at 27.

14     As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

15 Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the

16 Commissioner to this Court. (Dkt. # 4.)

17     **III.    LEGAL STANDARDS**

18     Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

19 security benefits when the ALJ's findings are based on legal error or not supported by substantial

20 evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

21 general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

22 ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

23

---

[2] 20 C.F.R. § 404.1520.

ORDER - 2

1  (cited sources omitted). The Court looks to "the record as a whole to determine whether the error
2  alters the outcome of the case." *Id*.

3      "Substantial evidence" is more than a scintilla, less than a preponderance, and is such
4  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
5  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th
6  Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical
7  testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d
8  1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may
9  neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.
10 Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one
11 rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

12                             IV.       DISCUSSION

13       A.       **The ALJ Erred in Evaluating Mental Impairments at Steps Two and Four**

14     The ALJ made several errors in evaluating Plaintiff's mental impairments at steps two
15 and four. At step two, the ALJ must determine whether the claimant has a "severe" impairment.
16 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is severe if it significantly
17 limits the claimant's ability to perform basic work activities for at least 12 months. *See* 20 C.F.R.
18 §§ 404.1509; 404.1520(a)(4)(ii). Importantly, "the step-two severity threshold is not high."
19 *Toledo v. Comm'r of Soc. Sec.*, 2024 WL 3029251, at *3 (E.D. Cal. June 17, 2024). This step
20 serves as a de minimis screening device to filter out groundless claims. *See Smolen*, 80 F.3d at
21 1290. As such, a claimant need only make a minimal showing to pass this step, and a denial
22 requires unambiguous evidence of no more than minimal limitations. *See Glanden v. Kijakazi*, 86
23 F.4th 838, 843-44 (9th Cir. 2023).

ORDER - 3

Plaintiff contends that the ALJ erred by concluding that her depression and anxiety disorders were not severe at step two. (Dkt. # 12 at 9-14.) She also argues that the ALJ ignored the cognitive effects of her fibromyalgia and chronic pain, such as brain fog. (*Id.*) Here, the ALJ attributed Plaintiff's limitations solely to physical impairments, without considering how mental disorders and chronic pain might worsen her mental health symptoms. AR at 20. This compartmentalized approach ignored the requirement that the ALJ evaluate the combined effect of all impairments on a claimant's ability to function. *See Smolen*, 80 F.3d at 1290 (At step two, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.")

The ALJ's conclusion that Plaintiff's mental impairments are non-severe is unsupported by substantial evidence. While the ALJ acknowledged Plaintiff's ongoing depression, anxiety, and cognitive difficulties, he downplayed these symptoms by emphasizing instances where Plaintiff presented as "pleasant" or "alert" during exams. AR at 20-21 (citing *id.* at 424, 432, 438, 481, 493, 516, 823, 1003, 1010). However, mental health symptoms often fluctuate, and relying on sporadic normal presentations to discount mental impairments is improper. Even individuals who appear well in a clinical setting may still struggle with debilitating mental impairments that affect their ability to work consistently. *See Lester v. Chater*, 81 F.3d at 821, 833 (9th Cir. 1995).

Furthermore, Plaintiff consistently reported difficulties with memory, concentration, following instructions, and managing stress. AR at 37-79, 258-78, 291-314. The ALJ acknowledged these complaints but failed to explain why they were not given more weight, particularly when clinical findings—such as difficulties with digit span and calculating serial numbers—supported them. *Id.* at 20-21. Given that step two is a de minimis screening device,

Plaintiff's burden on these points is low. *Tomasek v. Astrue*, 2008 WL 361129, at *13 (N.D. Cal. Feb. 11, 2008).

The ALJ also erred by relying on Plaintiff's "stable" symptoms with medication as evidence that her impairments were non-severe. AR at 20-21. Stability with medication does not imply the absence of functional limitations. Mental disorders often involve cycles of improvement and debilitating symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Even with treatment, the record reflects ongoing symptoms of anxiety, depression, and cognitive difficulties. The ALJ failed to consider whether Plaintiff's impairments, even when stable, would still hinder her ability to maintain full-time work. *See Smolen*, 80 F.3d at 1290.

Additionally, the ALJ improperly dismissed the opinion of consultative examiner Dr. Mansfield-Blair, who noted significant limitations in Plaintiff's ability to perform simple tasks, maintain regular attendance, and manage workplace stress. AR at 21 (citing *id.* at 750-55). The ALJ rejected this opinion because it was based on a single evaluation. However, the ALJ is required to evaluate whether medical opinions are supported by and consistent with the record. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Dr. Mansfield-Blair's findings were consistent with Plaintiff's self-reports and other evidence showing mood disturbances and cognitive issues, making the ALJ's conclusory dismissal at step two unjustified. *See*, *e.g.*, AR at 37-79, 258-78, 291-314, 424, 432-34, 438-41, 492-93, 515-16, 823, 1003-04. The ALJ's vague explanation for discounting Dr. Eather's opinion, which found moderate limitations, is also unsupported by specific evidence. *Id.* at 21 (citing *id.* at 108-13).

In sum, the ALJ's conclusion that Plaintiff's mental impairments were non-severe relied on an incomplete and selective reading of the record. The ALJ failed to fully consider the variability of Plaintiff's mental health symptoms, the interaction between her physical and

ORDER - 5

mental impairments, and the medical evidence documenting more than minimal limitations. As a result, the evidence does not unambiguously support a finding of only minimal limitations. *See Glanden*, 86 F.4th at 843-44.

While a step two error may be harmless if the ALJ adequately considers all impairments at step four, the ALJ must ensure the RFC reflects all of the claimant's medically determinable impairments. 20 C.F.R. § 404.1545(e). Here, the ALJ's omission of any mental health-related limitations in the RFC rendered it incomplete, therefore, the ALJ's step two error was not harmless. Even though non-severe impairments need not be included at step two, the ALJ must consider limitations resulting from those impairments in the analysis underlying the formulation of the RFC. *See Hutton v. Astrue*, 491 Fed. Appx. 850, 850 (9th Cir. 2012) (remanding due to the ALJ's failure to adequately address mild mental impairment limitations at step two and in formulating RFC); *see also Mercado v. O'Malley*, 2024 WL 967619, *5 (E.D. Cal. March 6, 2024) (distinguishing *Hutton* and remanding based on the ALJ's failure to consider mental limitations in the analysis underlying the RFC assessment); *Frary v. Comm'r of Soc. Sec.*, 2021 WL 5401495, *10-12 (E.D. Cal. Nov. 17, 2021) (compiling case law finding error based on *Hutton*); *Kramer v. Astrue*, 2013 WL 256790, *3 (C.D. Cal. Jan. 22, 2013) (following *Hutton* and reversing ALJ decision that failed to include mild mental limitations found at step two in the RFC determination).

Here, the ALJ did not consider limitations caused by any non-severe mental impairments in formulating the RFC. AR at 23-27. Doing so may or may not have resulted in a more restrictive RFC, but the ALJ was required to do the analysis. For example, the ALJ specifically acknowledged that Plaintiff alleged difficulty with memory, concentration, following instructions, understanding, and handling stress and changes in routine. *Id.* at 20. The Vocational

Expert testified at the hearing that a limitation to detailed, but not complex, predictable tasks, not performed in a fast-paced environment, with occasional workplace changes, and occasional interaction with the general public would eliminate Plaintiff's past work, and that employers would not tolerate more than 15% off-task behavior. *Id.* at 81-85. However, the ALJ did not even consider whether mild limitations in Plaintiff's ability to perform simple, routine tasks and work involving limited contact with co-workers and the public should be included in the RFC. This and other non-exertional limitations may have led to a more restrictive RFC, and the ALJ was required to specifically assess them at step four. Remand is therefore required.

### B. The ALJ Erred in Evaluating the Medical Source Statement of Cynthia Whitney, M.D.

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether they are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods*, 32 F.4th at 792.

In May 2021, Dr. Whitney, Plaintiff's treating physician since 2009, provided a medical source opinion stating that the Plaintiff's fibromyalgia, peripheral neuropathy, and major depression caused chronic pain, dizziness, nausea, headaches, and memory difficulties. AR at 580-81. Dr. Whitney also opined that the plaintiff would likely miss four or more days of work each month due to her need to lie down three days per week during symptom flares. *Id.* The ALJ found this opinion unpersuasive, stating it was unsupported by objective evidence and inconsistent with the record. *Id.* at 26.

Plaintiff argues that the ALJ erred by disregarding Dr. Whitney's extensive treatment history and focusing on isolated, normal objective findings that did not contradict Dr. Whitney's

overall assessment. (Dkt. #12 at 3-9.) The ALJ's decision to discount Dr. Whitney's opinion, citing Plaintiff's "stability with medication" and normal physical observations, missed the mark. AR at 26. An ALJ may not reject a medical opinion solely because it lacks objective evidence, especially when the condition, like fibromyalgia, is one that is not easily substantiated through objective measures. 20 C.F.R. § 404.1529(c)(2)-(3); *see Beneke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (requiring objective evidence for fibromyalgia is improper; "sheer disbelief is no substitute for substantial evidence"). Courts have repeatedly held that fibromyalgia symptoms cannot be discounted simply due to unremarkable clinical findings. *See Sara O. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4077781, at *2 (W.D. Wash. Sept. 8, 2021).

The fact that Plaintiff occasionally showed normal strength, sensation, and gait does not undermine Dr. Whitney's opinion that flare-ups would force her to lie down and prevent her from maintaining consistent employment. AR at 581. While improvement with medication can sometimes weaken a disability claim, "some improvement" does not mean a person can reliably function in a work setting. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). In this case, the plaintiff's symptoms may have improved with treatment, but they persisted nonetheless. AR at 424, 434, 492-93, 515-16, 738, 982, 1003-04; *see Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision unsupported by substantial evidence where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record.")

The ALJ's reliance on isolated reports of improvement or normal physical observations was misplaced. Dr. Whitney's opinion was based on objective test results, imaging, and clinical signs, such as the diagnosis of fibromyalgia, peripheral neuropathy, and major depression, along with evidence that Plaintiff's medication caused dizziness and nausea. AR at 580-81. Moreover, as Plaintiff's long-time treating physician, Dr. Whitney had the benefit of observing Plaintiff's

condition over time. Her opinion was supported by clinical findings throughout the relevant period, which the ALJ failed to meaningfully address. *Id.* at 418-500, 514-76, 1003-61. Clinical findings that support an opinion need not be contained within the same document, nor be rendered on the same day, as the opinion itself. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 n.8 (9th Cir. 2007).

Despite this substantial body of evidence, the ALJ found the opinions of non-examining state agency consultants "mostly persuasive," even though these consultants neither treated nor examined Plaintiff and formed their opinions without access to several years of medical records. AR at 25-26, 823-1321. This inconsistency further highlights the ALJ's failure to properly evaluate Dr. Whitney's opinion.

For all of these reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Whitney's opinion. Since Dr. Whitney's assessment included limitations that would preclude Plaintiff from maintaining employment, the ALJ's error was not harmless and requires correction on remand. AR at 81-85, 580-81.

### C. The ALJ Erred in Evaluating Lay Witness Testimony

Plaintiff's spouse, J.M., provided testimony describing Plaintiff's difficulties in maintaining a schedule, her inability to sleep due to chronic pain, and her need for assistance with personal care. AR at 291-97. J.M. also stated that Plaintiff struggled with driving, had limited walking ability, and found it difficult to pay attention, finish tasks, and follow spoken instructions. *Id.* While the ALJ acknowledged J.M.'s statements, he rejected them, citing Plaintiff's generally stable symptoms and improvement following surgeries. *Id.* at 26.

Plaintiff contends that the ALJ erred by dismissing J.M.'s testimony without adequately considering her chronic pain and cognitive impairments. (Dkt. # 12 at 14-17.) The Court agrees. An ALJ cannot simply reject lay witness testimony solely because it is not corroborated by medical evidence. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017) (rejecting lay witness testimony because it is "not consistent with the overall record" is insufficient without more explanation). Lay witness testimony is particularly valuable in providing insight into the day-to-day impacts of a claimant's impairments, which may not always be reflected in clinical reports. *See Dale v. Colvin*, 823 F.3d 941, 944-45 (9th Cir. 2016).

The ALJ's focus on Plaintiff's improvement with surgeries and general stability with treatment overlooks key elements of J.M.'s testimony that pertained to Plaintiff's ongoing pain and cognitive difficulties, which remained even after surgery. AR at 26. Physical improvements, such as surgical recovery, do not necessarily translate into a complete resolution of functional limitations. *Garrison*, 759 F.3d at 1017 (noting that mental and physical conditions often involve "cycles of improvement and debilitating symptoms"). By dismissing J.M.'s testimony based solely on moments of improvement, the ALJ failed to consider how fluctuating symptoms might affect Plaintiff's daily life and capacity to work.

Given that the ALJ's errors in evaluating the medical evidence and impairments require remand, the ALJ must also reconsider J.M.'s testimony in light of any new evidence or testimony that may be presented. The reevaluation of the medical opinions could significantly affect the ALJ's consideration of the lay witness testimony and the RFC. On remand, the ALJ is required to reassess all relevant evidence, including J.M.'s testimony, to ensure that the RFC properly accounts for Plaintiff's limitations. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (an RFC must consider and address all relevant opinions and limitations); *see also Valentine v.*

ORDER - 10

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (an RFC that fails to consider significant limitations, as described by lay testimony, is defective).

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical and testimonial evidence, reassess Plaintiff's RFC, and proceed to the remaining steps of the disability process as appropriate.

Dated this 27th day of September, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge